IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 18-cv-01421-PAB-KLM

SOO CHONG LEE and
MYUNG HWA YOON, as parents and next friends of H.L., a deceased minor,

    Plaintiffs,

v.

YOUNG LIFE, a Texas nonprofit corporation,

    Defendant.

# ORDER

This matter is before the Court on the Motion to Dismiss for *Forum Non Conveniens* [Docket No. 15] filed by defendant Young Life.

## I. BACKGROUND [1]

This action arises from the death of a minor at defendant's Malibu Club, a summer camp located on a remote island in British Columbia, Canada. Docket No. 1 at 5, ¶ 28. The minor, H.L., was the eldest son of plaintiffs Soo Chong Lee and Myung Hwa Yoon. *Id*. at 3, ¶ 11. All three are citizens of South Korea. *Id*. at 1, ¶ 1. H.L. attended Challis High School in Challis, Idaho, during the 2015-16 school year as part of an exchange program. *Id*. at 3, ¶ 16.

Defendant Young Life is a corporation that operates summer camps. *Id*. at 2, 4,

---

    [1]The following facts are drawn from plaintiffs' complaint and are assumed to be true for purposes of the present motion. *See Intercon Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (accepting as true the facts alleged in the complaint in deciding motion to dismiss for *forum non conveniens*).

¶¶ 3, 20. Defendant is a Texas corporation with its headquarters located in Colorado Springs, Colorado. *Id*. at 2, ¶ 3. Defendant owned and operated Malibu Club as a summer camp for high schoolers. *Id*. at 3-4, ¶ 17. With permission from both plaintiffs and his host family, H.L. decided to attend a one-week summer camp at Malibu Club from June 4-10, 2016. *Id*. at 4, ¶ 25.

One of Malibu Club's features was a beach volleyball court next to rapidly flowing water. *Id*. at 6, ¶ 31. On June 8, 2016, H.L. was playing beach volleyball with other campers when the volleyball was hit out of bounds. *Id*. at 8, ¶¶ 52, 54. Not knowing whether the ball had landed on the rocks or in the water, the other campers decided that H.L. should retrieve the ball. *Id*., ¶¶ 55, 57. When he went to retrieve the ball, H.L. slipped on the rocks and fell into the water. *Id*. at 9, ¶ 60. H.L. could not swim. *Id*. at 6, ¶ 32. H.L. went under and was carried off by the fast moving water. *Id*. at 9, ¶ 61. Two days later, Canadian authorities recovered H.L.'s body. *Id*., ¶ 66.

On June 7, 2018, plaintiffs filed this lawsuit. *Id*. Plaintiffs assert three claims against defendant: (1) wrongful death resulting from negligence; (2) violation of the Colorado Premises Liability Act, Colo. Rev. Stat. § 13-21-115; and (3) respondeat superior. *Id*. at 9-13, ¶¶ 69-89.

## II. ANALYSIS

A federal court sitting in diversity applies the federal doctrine of *forum non conveniens* in deciding a motion to dismiss in favor of a foreign forum. *Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 992 (10th Cir. 1993). The "doctrine of *forum non conveniens* proceed[s] from [the] premise [that] . . . [i]n rare circumstances,

federal courts can relinquish their jurisdiction in favor of another forum" when trial in another country would be more appropriate. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (emphasis omitted). "The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)) (brackets omitted). The *forum non conveniens* determination is committed to the sound discretion of the trial court. *Piper Aircraft*, 454 U.S. at 257. While "normally there is a strong presumption in favor of hearing the case in the plaintiff's chosen forum," *Gschwind*, 161 F.3d at 606, this assumption is "much less reasonable" in the case of a foreign plaintiff. *Piper Aircraft*, 454 U.S. at 256.

The *forum non conveniens* assessment involves two threshold questions:

> [F]irst, whether there is an adequate alternative forum in which the defendant is amenable to process, and second, whether foreign law applies. If the answer to either of these questions is no, the *forum non conveniens* doctrine is inapplicable. If, however, the answer to both questions is yes, the court goes on to weigh the private and public interests bearing on the *forum non conveniens* decision.

*Id.* at 605-06 (internal citations omitted). The defendant bears the burden of proof on all elements of the *forum non conveniens* analysis. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007).

### A. Threshold Determinations

#### 1. *Availability of Alternative Forum*

The issue of whether an alternative foreign forum exists is a two-part inquiry involving availability and adequacy. The availability requirement is ordinarily met when a defendant agrees to be amenable to process in the foreign forum. *Gschwind*, 161

3

F.3d at 606 (citing *Piper Aircraft*, 454 U.S. at 254 n.22). Here, defendant states that it is amenable to process in British Columbia, and plaintiffs do not dispute that British Columbia is an available forum for this litigation. *See* Docket No. 15 at 4. Thus, the Court finds that British Columbia is an available forum for this litigation.

### 2. Adequacy of Alternative Forum

Since the Court finds that British Columbia is an available forum for the purposes of this action, the Court will turn to the issue of its adequacy. Adequacy does not require that the alternative forum provide the same relief as an American court. *See Gschwind*, 161 F.3d at 607. "Instead, the alternative forum is not inadequate unless its remedy is 'so clearly inadequate that it is no remedy at all.'" *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1174 (10th Cir. 2009) (citation, quotation, and ellipses omitted).

Defendant states that an adequate remedy is available for plaintiffs under British Columbia law. Docket No. 15 at 5-6. Plaintiffs seek to recover damages for H.L.'s death, with their three claims alleging three different theories of defendant's liability (common law negligence, the Colorado premises liability statute, and respondeat superior). *See* Docket No. 1 at 9-13, ¶¶ 69-89. Defendant argues that two British Columbia statutes provide a similar remedy. The Wills, Estates and Succession Act provides that "the personal representative of a deceased person may commence or continue a proceeding the deceased person could have commenced or continued, with the same rights and remedies to which the deceased person would have been entitled, if living." Wills, Estates and Succession Act, S.B.C. 2009, c.13 150(2). Additionally, the Family Compensation Act allows for surviving members of a deceased person's family

to be compensated for the value of lost household assistance and expected future financial benefits.  Family Compensation Act, R.S.B.C. 1996, c. 26.  The Washington Court of Appeals has concluded that these statutes offer a plaintiff an adequate alternative forum in British Columbia in an action for wrongful death.  *See Klotz v. Dehkhoda*, 141 P.3d 67, 69 (Wash. App. 2006).  Although plaintiffs argue that British Columbia is not an adequate alternative forum because their claims would be barred by the applicable statute of limitations, *see* Docket No. 20 at 3-6, defendant agrees, as a condition of dismissal, not to oppose an action filed by plaintiffs in British Columbia on statute of limitations grounds.  *See* Docket No. 24 at 2.  Defendant also identifies British Columbia law indicating that parties are allowed to waive a statute of limitations defense, as the act "only arises when pled as a defence to a claim."  *Id*. at 2-3 (citing *FORCOMP Forestry Consulting Ltd. v. British Columbia*, 2017 BCSC 1157 (Chambers), para. 11).

Plaintiffs argue that, because the British Columbia Civil Rules presumptively only allow plaintiffs to depose one person, they would be "hamstrung" in their attempts to prosecute the case in British Columbia.  Docket No. 20 at 6 (citing British Columbia Civil Rules, Rule 7-2(5)(a) (also at Docket No. 20-3 at 2-3)).  However, this argument does not address whether the forum will provide plaintiffs with an adequate remedy.  Rather, it goes to the private interest factors, such as the relative ease of access to sources of proof and availability of compulsory process for compelling attendance of witnesses, that the Court weighs if the threshold questions are met.  *See Gschwind*, 161 F.3d at 606.

In sum, the Court finds that defendant has met its burden and that British Columbia is an available and adequate alternative forum.

### 3. Applicable Law

Having determined that there is an adequate alternative forum, the Court now turns to the question of whether British Columbia or Colorado law will govern this dispute. *Id.* at 608 ("[C]hoice of law is a threshold determination for application of forum non conveniens."). If domestic law is applicable, the *forum non conveniens* doctrine is inapplicable. *Rivendell Forest Prods.*, 2 F.3d at 993 n.4; *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir. 1983). A federal court sitting in diversity applies the choice of law rules of the state in which the district is located. *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1219 (10th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). In this case, therefore, Colorado's choice of law rules apply.

Colorado applies the "most significant relationship" analysis codified at § 145 *et seq.* of the Restatement (Second) of Conflict of Laws (1971). *Boone v. MVM, Inc.*, 572 F.3d 809, 811-12 (10th Cir. 2009) (citing *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007)); *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012) (citing *Dworak v. Olson Constr. Co.*, 551 P.2d 198, 199 (Colo. 1976)); *First Nat'l Bank in Fort Collins v. Rostek*, 514 P.2d 314, 320 (Colo. 1973). A court considers the following contacts in determining which state's law applies to an issue: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality,

place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws, §§ 6, 145 (1971). The contact factors are considered in light of certain policy considerations, including:

> [T]he needs of the interstate and international systems, the relevant policies of the forum and other interested states, protection of justified expectations, the basic policies underlying the particular field of law, predictability and uniformity of result, and ease of determination and application of the law to be applied.

*AE*, 168 P.3d at 510 (citing Restatement (Second) of Conflict of Laws, § 6 (1971)); *see also Boone*, 572 F.3d at 812. "These policy considerations vary in importance and in application depending upon the field of law and the particular issue under consideration." *Galena Street Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2013 WL 2114372, at *6 (D. Colo. May 15, 2013) (quoting *Sabell v. Pac. Intermountain Express Co.*, 536 P.2d 1160, 1164 (Colo. App. 1975)). "When, as here, the case involves claims of personal injury, the location of the injury presumptively provides the controlling law unless some other state has a more significant relationship." *Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1210 (D. Colo. 2010); *see also Boone*, 572 F.3d at 812 n.1 (citing Restatement (Second) of Conflict of Laws, § 146 (1971)).

### a. Contact Factors

#### i. Locus of the Injury

The place where the injury occurred "effectively creat[es] a presumption that that jurisdiction provides the appropriate law." *Elvig*, 696 F. Supp. 2d at 1210 (citing *Boone*,

7

572 F.3d at 812 n.1); *see also* Restatement (Second) Conflict of Laws, § 145, cmt. e (1971) ("In the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law . . . ."). Both parties agree that H.L.'s death occurred in British Columbia, Canada. *See* Docket No. 1 at 5, ¶ 28. This provides strong evidence that British Columbia law governs. *See Elvig*, 696 F. Supp. 2d at 1210.

### ii. Locus of the Allegedly Tortious Conduct

Next the Court determines the place where the conduct allegedly causing the injuries occurred. Both parties agree defendant's allegedly tortious conduct occurred in British Columbia, Canada. *See* Docket No. 1 at 5, ¶ 28. This also supports applying British Columbia law.

### iii. Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties

"The residence of the parties is not a particularly significant factor." *Elvig*, 696 F. Supp. 2d at 1212. Plaintiffs are South Korean citizens, while defendant is an American corporation domiciled in Texas and Colorado doing business in British Columbia. *Id.* at 1-4, ¶¶ 1, 3, 17. The Court finds that this factor is neutral.

### iv. Place Where the Relationship, if any, of the Parties is Centered

As defendant argues, and plaintiffs do not dispute, the relationship between the parties is centered in British Columbia. *See* Docket No. 15 at 8. Plaintiffs do not allege that they have had any contact with defendant in Colorado. Moreover, courts have found in the context of the resort industry that the location of a resort must be given

8

weight in determining the locus of the parties' relationship. *See Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1377 (S.D. Fla. 2013) (because the key events supporting plaintiff's negligence claim occurred at a Bahamian resort, "the most significant relationship test would likely require the application of Bahamian law.").

As the locus of both plaintiffs' injury and defendant's allegedly tortious conduct is British Columbia, and the relationship of the parties is centered in British Columbia, the Court finds that defendant has met its burden to show that the "most significant relationship" test supports the application of British Columbia law.

### b. Policy Considerations

Neither party makes any argument regarding the policy considerations, and plaintiffs do not offer any argument why Colorado law would apply to this dispute. Briefly, the Court finds that policy considerations weigh in favor of applying British Columbia law. The first factor, needs of the interstate and international systems, weighs in favor of applying British Columbia law because applying Colorado law to tort claims that arose and occurred in British Columbia does not "further harmonious relations between states [or] facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws, § 6, cmt. d (1971).[2] The Court also concludes that the fifth and sixth factors weigh heavily toward British Columbia law. Applying British Columbia law to an injury allegedly caused and suffered in British Columbia fosters predictability, uniformity of result, and ease of determination and

---

[2] As there is no evidence regarding the second factor, relevant policies of the forum and other interested states, the third factor, protection of justified expectations, or the fourth factor, basic policies underlying the particular field of law, the Court finds that these factors are neutral.

application of the law to be applied.  According to the Restatement, applying the law of the place where the injury occurs is "easy . . . and leads to certainty of result" because "the place of injury is readily ascertainable."  Restatement (Second) of Conflict of Laws, § 146, cmt. e (1971).

For the foregoing reasons, the Court finds that British Columbia law applies.

## B.  *Forum Non Conveniens*: Private and Public Interest Factors

Having answered both threshold questions in the affirmative, the Court now weighs the various private and public interests.  *Gschwind*, 161 F.3d at 606.  The private interest factors that a court is to consider are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for compelling attendance of witnesses; (3) the cost of obtaining attendance of willing non-party witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious, and inexpensive.  *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The public interest factors that a court is to consider include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.  *Id.* (citing *Gulf Oil*, 330 U.S. at 508-09).

As an initial matter, the parties dispute what burden applies.  There is normally a "strong presumption in favor of hearing the case in the plaintiff's chosen forum," which

is Colorado. *See Gschwind*, 161 F.3d at 606. Defendant argues that this presumption "applies with less force" in the case of a foreign plaintiff, such as plaintiffs. *See* Docket No. 15 at 3-4, 9 (citing *Piper Aircraft*, 454 U.S. at 256). In response, plaintiffs contend that a forum resident – such as defendant – "should have to make a stronger case than others for dismissal based on *forum non conveniens*." *See* Docket No. 20 at 3-4 (citing *Gschwind*, 161 F.3d at 608).

In *Gschwind*, the Tenth Circuit upheld the *forum non conveniens* dismissal of a case brought by a foreign plaintiff against two defendants, one of which was an international organization who resided in the forum state. 161 F.3d at 605. The court affirmed the district court's conclusion that a foreign plaintiff's choice of forum deserves less deference. *Id*. at 608. The court acknowledged that one of the defendants was a forum resident, which is ordinarily required to make a stronger case for dismissal. *Id*. at 609. However, the court observed that the forum resident was an international organization, concluding that "the fact that a defendant is a resident of the forum has more weight in the *forum non conveniens* analysis when the defendant is an individual rather than a broad-based corporation." *Id*. The court also noted that the district court weighed the defendant's residency against it in analyzing the public interest factors. *Id*.

Plaintiffs are citizens of South Korea. Docket No. 1 at 1, ¶ 1. They are therefore entitled to less deference in their choice of forum than the "strong presumption" that courts typically give plaintiffs. *See Gschwind*, 161 F.3d at 606, 608; *Piper Aircraft*, 454 U.S. at 256. Defendant, meanwhile, is a resident of Colorado, the forum state. Docket No. 1 at 2, ¶ 3. However, defendant is an international organization, operating camps

in several U.S. states and at least one other country, rather than an individual. *Id*. at 4, ¶ 20. Therefore, its status as a forum resident is afforded less weight in the analysis. *Gschwind*, 161 F.3d at 608.

Accordingly, the Court will apply a presumption, but not a strong presumption, in favor of plaintiffs' choice of forum.

### 1. *Private Interests*

#### a. Relative Ease of Access to Sources of Proof

Defendant argues that the evidence in this case, such as sources of documentary and testimonial proof, are largely located in British Columbia. Docket No. 15 at 9-10. Defendant indicates that the most important evidence will consist of the staff's testimony about the camp's policy and procedures, as well as testimony from the Royal Canadian Mounted Police who responded to the accident scene. *Id*. at 10. Defendant offers an affidavit from the Malibu Club camp manager, Harold Richert, stating that he was working on the day of the accident, that he has "unmatched" knowledge about the camp's operation, and that he is a British Columbia citizen. Docket No. 15-2 at 2-3, ¶¶ 3-5. Plaintiffs agree that the issue in this case is defendant's policies and procedures, but they claim that the ease of access to corporate evidence and other documentary evidence regarding those policies and procedures is no greater in British Columbia than in Colorado. Docket No. 20 at 8-9. Plaintiffs also contend that the key witnesses in the case are not Canadian camp counselors, but rather American campers. *Id*. at 10.

Plaintiffs' first claim for relief alleges defendant's negligence. Docket No. 1 at 9.

Most of the allegations of specific instances of defendant's negligence involve acts or failure to do acts near the time of H.L.'s death. *Id*. at 10-11, ¶ 72. The individuals at the camp who purportedly breached duties owed to H.L. are important witnesses in any liability determination. Defendant states that these individuals are "located in British Columbia and are Canadian citizens." *See* Docket No. 15 at 9; Docket No. 15-2 at 2, ¶ 3 (affidavit of camp manager). Defendant states that the British Columbia law enforcement officers who investigated the incident are also important witnesses and are residents of British Columbia (or, at least, Canada). Therefore, the Court agrees with defendant that a significant number of witnesses relevant to plaintiffs' wrongful death claim are based in British Columbia.[3] However, plaintiffs identify a large number of H.L.'s fellow campers who also have evidence relevant to the volleyball area and the circumstances leading up to H.L.'s death, which witnesses live in the United States. *See* Docket No. 20 at 10. The Court agrees with plaintiffs that the American witnesses are likely to provide relevant testimony. Without making any determinations about the weight of the evidence at this stage, the Court finds that this factor is neutral.

### b. Availability of Compulsory Process for Compelling Attendance of Witnesses

As previously stated, many of the potential witnesses in this action are domiciled in Canada. *See* Docket No. 15 at 9. Canadian citizens are beyond the Court's subpoena power. *See* Fed. R. Civ. P. 45(c). Plaintiffs suggest that their key witnesses,

---

[3] The Court agrees with plaintiffs that documents can be just as easily accessed in Colorado as they can in British Columbia. *See Cooksey v. Union Pac. R.R. Co.*, No. 08-cv-00445-KMT-MJW, 2008 WL 4457863, at *3 (D. Colo. Oct. 2, 2008) ("[T]he location of the documentary evidence . . . is of minimal significance.").

who are H.L.'s fellow campers, are residents of the United States who cannot be called by a court in British Columbia. Docket No. 20 at 10. Plaintiffs, however, ignore the fact that this Court also does not have compulsory process available to call the American witnesses at trial. Fed. R. Civ. P. 45(c)(1)(A) limits a court's subpoena power for a trial, hearing, or deposition to "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Plaintiffs identify nine witnesses who live in Idaho, Nevada, and California. *See* Docket No. 20-4 at 2-3, ¶¶ 5-9. No point in any of those states is within 100 miles of Denver, Colorado, and therefore this Court would not be able to compel their attendance at trial. Accordingly, plaintiffs have not shown that the Court has subpoena power over any of the American witnesses.

Plaintiffs argue that they would be "hamstrung" in prosecuting their case in Colorado because plaintiffs are "presumptively only allowed to depose one person." *See* Docket No. 20 at 6. The British Columbia civil rules only allow plaintiffs to take one deposition (in Canada called an "examination for discovery") of a party. *See* British Columbia Civil Rules, Rule 7-2(5)(a). However, the rules also allow for the parties to take depositions "[b]y consent of the parties . . . or by order of the court . . . in order that the record of the examination may be available to be tendered as evidence at the trial." *See id.*, Rule 7-8(1). This rule takes into account "the possibility that the person will be beyond the jurisdiction of the court at the time of the trial," and "applies to the examination of a person residing outside British Columbia." *See id.*, Rule 7-8(3)(c), (8). The Court concludes that plaintiffs would be able to introduce testimony from the American witnesses in a trial held in British Columbia.

The many difficulties in obtaining testimony and evidence located in foreign jurisdictions and this Court's lack of subpoena power to compel testimony from plaintiffs' out-of-state American witnesses weigh strongly in favor of dismissal on *forum non conveniens* grounds.

### c. Cost of Obtaining Attendance of Willing Non-Party Witnesses

The parties agree that this factor is neutral. Docket No. 15 at 10-11, Docket No. 20 at 11. Whether the trial is in British Columbia or Colorado, at least some willing non-party witnesses will need to travel to another country to take part in the trial. The Court finds this factor is neutral as well.

### d. Possibility of a View of the Premises, if Appropriate

The summer camp where plaintiffs' claims arose is located on a remote island in British Columbia, Canada. Docket No. 1 at 5, ¶ 28. Plaintiffs allege that defendant was negligent in where it installed the beach volleyball court, by installing inadequate netting to prevent balls going into the water, and by improperly securing the area around the court. *Id*. at 10, ¶ 72. Defendant states that viewing the location of the court and volleyball area in relation to the water will be "helpful." Docket No. 15 at 11. Plaintiffs point out that Malibu Club is accessible only by boat or seaplane, making a jury visit impractical. Docket No. 20 at 12. The Court agrees that the probability of the jury conducting an on-site viewing is very low. Maps, aerial photographs, and video will provide the jury with the ability to assess the layout of the volleyball area in relationship to the water and terrain. This factor is therefore neutral.

### e. All Other Practical Problems That Make Trial of the Case Easy, Expeditious, and Inexpensive

Defendant observes that trial in Colorado will be "more difficult" because the plaintiffs, the most important witnesses, and the evidence are not located in Colorado. Docket No. 15 at 11. However, as plaintiffs point out, this argument is duplicative of defendant's argument on the previous four factors. Docket No. 20 at 12. The Court finds that this factor is neutral.

#### 2. Public Interests

### a. Administrative Difficulties of Courts With Congested Dockets Which can be Caused by Cases not Being Filed at Their Place of Origin

The most relevant statistics in evaluating the administrative difficulties of court congestion are the median time from filing to disposition, the median time from filing to trial, pending cases per judge, and the average weighted filings per judge. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). Neither party has provided these statistics as they relate to British Columbia. The Court finds that it cannot engage in a meaningful comparison without comparable statistics. *See id.* (comparing statistics from current and proposed forums); *Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1259-60 (D.N.M. 2013) (same). The Court finds defendant has not satisfied its burden as to this factor and finds it is neutral.

### b. Burden of Jury Duty on Members of a Community With No Connection to the Litigation

Plaintiffs' claimed connection to Colorado is that defendant is a corporation headquartered in Colorado, and it operates camps in Colorado. Docket No. 20 at 14.

16

As Colorado citizens, jurors have some connection to this litigation. However, any connection to Colorado beyond that is minimal at best since British Columbia law will govern and the injuries were allegedly caused and arose in British Columbia. *See Alpine Atlantic Asset Mgmt. AG v. Comstock*, 552 F. Supp. 2d 1268, 1283 (D. Kan. 2008) ("Jury duty should not be imposed on the citizens of Kansas in a case that has such a tenuous connection with this state, particularly when the only connection is the fact that the defendant is a Kansas resident . . . ."); *Chang v. Vail Resorts, Inc.*, No. 15-cv-01731-REB-NYW, 2016 WL 590375, at *8 (D. Colo. 2016) (recommendation of magistrate judge) (holding that this factor favors defendants even though one is a forum resident where Jamaican law applies and the dispute is over conduct that happened outside Colorado). This factor, therefore, supports *forum non conveniens* dismissal.

### c. Interest in Having Localized Controversies Decided at Home

As stated above, Colorado has a minimal interest in the present litigation. While Colorado has some interest in determining the accountability of businesses residing in Colorado, it is far outweighed by British Columbia's "substantial interest in holding businesses operating in [British Columbia] accountable." *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 665 (9th Cir. 2009) (discussing Mexico). The crux of plaintiffs' complaint is that defendant, operating in British Columbia, caused them injuries, and British Columbia has a significant interest in ensuring that companies operating summer camps on its soil complies with British Columbia laws. This factor supports *forum non conveniens* dismissal.

### d. Appropriateness of Having Diversity Cases Tried in a Forum That is Familiar With the Governing Law

Because British Columbia's tort law governs this litigation, a British Columbia court is better suited than an American court to hear this case. The Court finds this factor favors a British Columbia forum.

Therefore, having answered the two threshold questions of the *forum non conveniens* analysis in the affirmative, the Court finds that the private and public interest factors, when viewed as a whole, weigh in favor of a British Columbia forum for this litigation. As a result, defendant overcomes the presumption shown to foreign plaintiffs suing a forum resident. Thus, dismissal on *forum non conveniens* grounds is appropriate. The Court grants *forum non conveniens* dismissal, conditioned on (1) defendant's agreement not to oppose plaintiffs' filing of an action in British Columbia on statute of limitations grounds, and (2) defendant's consent to having the action reinstated in this Court if British Columbia refuses jurisdiction. *See Gschwind*, 161 F.3d at 607.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Young Life's Motion to Dismiss for *Forum Non Conveniens* [Docket No. 15] is **GRANTED**. It is further

**ORDERED** that this case is dismissed in its entirety.

DATED February 20, 2019.

                                        BY THE COURT:


                                         s/Philip A. Brimmer                    
                                        PHILIP A. BRIMMER
                                        United States District Judge